No. 30,083.

H. T. Korb, *Appellee*, v. The Minneapolis Threshing Machine Company, *Appellant*.

(3 P. 2d 502.)

784

Opinion filed October 10, 1931.

*F. H. Stubbs* and *Daniel Stubbs*, both of Superior, Neb., for the appellant.

*D. F. Stanley, L. E. Weltmer* and *D. M. McCarthy*, all of Mankato, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The question involved in this appeal is the priority of the liens of two mortgages depending upon the construction to be given to a subsequent stipulation signed by the maker of the mortgages and the appellee, who holds the mortgage designated as first.

One Ed Smith, the owner of a quarter section of land in Jewell county, gave a first mortgage thereon to Korb in April, 1926, and the same day gave a second mortgage thereon to Stansbury, both of which were promptly recorded and became liens on the land. Five months later Smith gave a mortgage to the Minneapolis Threshing Machine Company, appellant herein, making it subject to the two earlier mortgages. This was also promptly recorded and became a third lien. Four months later, in January, 1927, Smith gave a warranty deed to the land in question to Stansbury, subject to the first two mortgages, which Stansbury assumed and agreed to pay. In 1929 Smith brought an action in the district court of Jewell county to set aside the first and second mortgages he had given to Korb and Stansbury and the warranty deed he had given to Stansbury, alleging fraud and misrepresentations in the procuring of them, and claiming damages sustained by him because of the fraudulent acts of these two parties. This action was settled and disposed of by stipulation signed and filed in the district court of Jewell county on October 19, 1929, which contains the following paragraph:

"That all indebtedness by the plaintiff to any of the defendants and by any of the defendants to the plaintiff is fully satisfied and paid."

In May, 1930, Korb commenced this foreclosure action, making

Stansbury and the appellant parties defendant, with the usual allegations as to their claiming some interest in the land. Stansbury answered, setting up his mortgage, and judgment was rendered July 22, 1930, giving Korb a first lien, and Stansbury a second, and barring the appellant served by publication and in default for answer. The land was sold August 26, 1930, to plaintiff under an order of sale for no more than the amount of the first mortgage and costs. On September 13, 1930, the appellant made application to open up the judgment and requested to be let in to defend, tendering an answer and cross petition setting up its mortgage and claiming it to be a first lien because of the payment of the first and second mortgages as shown by the stipulation which it plead. After the court permitted the threshing machine company to defend, Korb and Stansbury replied, denying the allegations of the answer and cross petition of appellant and alleging that the stipulation was intended only to release and did only release Smith from personal liability and obligation, reserving the mortgage liens upon the land, and if the stipulation indicates anything to the contrary it was by mutual mistake and not as intended.

On the trial during the November term, 1930, the court gave the plaintiff Korb a first lien as had been done in the original judgment, but gave the appellant a second lien instead of Stansbury, and declined to set aside the sheriff's sale, but extended the redemption period eighteen months from date of confirmation and then confirmed the sale. From this decree the threshing machine·company appeals, claiming its right to a first lien and a new sale by the sheriff. Stansbury has not appealed.

The appellant earnestly contends and insists that the words used in the stipulation are unambiguous and mean just what they say, viz., that the indebtedness of Smith to Korb is fully satisfied and paid, and logically reasons therefrom that when the debt is discharged the mortgage lien which secures it falls and ceases. If we confine ourselves to the paragraph above quoted from the stipulation there would be no room for argument nor difference of opinion upon the subject. But the trial court had before it the entire stipulation, the pleadings raising an issue as to the proper construction of it, and the intention of the parties to it, the evidence of parties as to such intention and the fact of the conveyance of the property by Smith to Stansbury, subject to the first and second mortgages

which the grantee assumed and agreed to pay, which assumption, when recognized by the mortgagee Korb, made Stansbury the principal debtor and Smith, the mortgagor, only a surety. (*Savings Bank v. Butler*, 56 Kan. 267, 43 Pac. 229; and *Smith v. Kibbe*, 104 Kan. 159, 178 Pac. 427.)

The action which was dismissed by the terms of the stipulation had been brought by Smith to recover more than $10,000 in damages and to set aside the two mortgages and the deed. In consideration of the dismissal of this action Smith was relieved of all indebtedness to Korb and Stansbury, received an adjustment of the current crop rent of the land and $125 in cash, and he paid the costs.

The stipulation, instead of setting aside the mortgages and the deed, which was one of the two important purposes of the suit, by its express terms confirmed and ratified the deed which was made subject to the two mortgages, which was a direct recognition of the existence and continuance of the two mortgages.

The paragraph of the stipulation immediately preceding the one above quoted, providing that all indebtedness of Smith to Korb and Stansbury is fully satisfied and paid, is as follows:

"That the parties agree that the deed from the plaintiff to the defendant, J. A. Stansbury, for all of the above-described lands, was rightfully delivered and placed of record; that it operates as a deed and not as a mortgage or security for indebtedness, and that it passes to the defendant, J. A. Stansbury, all the right, title and interest of the plaintiff in and to all of the above-described real estate, except the right to crops and rents as above described until March 1, 1930; that after March 1, 1930, the plaintiff has no right, title or interest in or to any of the above-described real estate and hereby covenants and agrees that on or before said date he will give up full and complete possession of said real estate to the defendant J. A. Stansbury."

This paragraph recognizes the existence of a present indebtedness, when it says that the conveyance to Stansbury "operates as a deed and not as a mortgage or security for indebtedness." If the indebtedness was to be completely disposed of and satisfied by stipulation, what could have been the necessity for specifically providing against the possibility of the deed being regarded as a mortgage? To accept the construction and theory of the appellant we find Smith, instead of giving Stansbury a deed requiring him, the grantee, to assume and agree to pay two mortgages as he had originally done, now giving him, the holder of the second lien, a good title free and clear of encumbrances for the purpose of being freed from the personal obligation as surety for the indebtedness of the

two mortgages, and we find the holder of the first lien left without anything whatever.

The reasonable rules of construction require that effect be given to each and all the provisions of the stipulation—the reference to the deed not being security for indebtedness as well as the statement that all indebtedness was fully satisfied and paid. When we do this, in the light of the fact that the acceptance and recognition of the deed given by Smith left him only liable as surety on these two obligations and not as principal, the most reasonable construction is that which would relieve him from his only remaining or existing liability. If relieved from this liability he would not be concerned in the matter of the satisfaction or release of the mortgages, he having conveyed away all his right, title and interest in the land.

The question of merger is not of vital importance in the case as it now stands, first, because it most concerns the interests of Stansbury and he is not now interested in the case; and, second, because the stipulation distinctly provides that the conveyance is to operate as a deed.

It must be kept in mind that the debt and the liability of the mortgagor are two distinct things, and, as stated above, there is no room for argument in this case if the construction of the entire contract compels the use and meaning of the word "debt" without any modification or expressed intention otherwise. In addition to the reasonable construction of the entire instrument appearing to us to require a modification of the term, the testimony introduced upon the trial strengthened and confirmed such as having been the intention of the parties. This testimony was received over the objection of the appellant and we see no error in such ruling because the pleadings made an issue as to intention and fully justified the admission of evidence in support of the allegations as to such intention.

"The debt and the mortgagor's liability for it are not the same thing in law. Hence the mortgage is not discharged if it is the intention of the parties merely to release the mortgagor's personal liability for it and not to extinguish the debt." (41 C. J. 785.)

"For the purpose of accomplishing an equitable result, a mortgage lien may be kept alive and enforced after the lien claimant has placed himself in a position which precludes him from resorting to the personal obligation of the mortgagor or anyone else for satisfaction of the debt." (41 C. J. 787.)

In the case of *James v. Williams,* 102 Kan. 231, 169 Pac. 1163, the mortgagee accepted a quitclaim deed in lieu of his mortgage and canceled and surrendered his note, but did not release the mortgage. Later a junior mortgagee attempted to foreclose his mortgage as a first lien, and it was held that the first mortgage lien could be enforced even though the holder was precluded from resorting to the personal obligation of the mortgagor. The syllabi are as follows:

"For the purpose of accomplishing an equitable result, a mortgage lien may be kept alive and enforced after the lien claimant has placed himself in a position which precludes him from resorting to the personal obligation of the mortgagor, or of anyone else, for satisfaction of the debt.

"The holder of a mortgage on real estate took a quitclaim deed of the premises, in lieu of his mortgage. The deed was made by a grantee of the mortgagor, who had not assumed payment of the debt. The mortgagee took possession under the deed, canceled the mortgagor's note, and surrendered it. The debt was not satisfied by anyone, and the mortgage was not released. The mortgagee then discovered that the maker of the quitclaim deed had given a mortgage on the premises. This mortgage recited that it was subject to the other. The holder of the second mortgage sought to foreclose it as a first lien. *Held,* the principle stated in paragraph 1 applies, and the junior mortgagee's position was not bettered because the first mortgagee canceled and surrendered the note secured by his mortgage." (Syl. ¶¶ 1, 2.)

Along the same line it is said in 2 Jones on Mortgages (8th ed., § 1261):

"The personal liability of the mortgagor may be released without extinguishing the mortgage, if this be done without any intention of discharging the debt. Such a release of personal liability is sometimes made when the mortgagor has sold the premises to another who has assumed the payment of the debt, and the mortgagee is willing to look to the latter and the property for the satisfaction of his claim.

· · · · · · · · · · · · · · · ·

"Whether the intention in any case was to discharge the debt or merely the personal liability is a question of fact, depending upon the circumstances of the case or the construction of the release.

· · · · · · · · · · · · · · · ·

"If the mortgage note be given up by the mortgagor to be canceled without a release of the mortgage, and the mortgagor releases the land to him, the transaction is open to the inquiry whether the purpose of it was to discharge the mortgage or merely to release the mortgagor from personal liability. If the debt was not in fact paid, and the land was still to be charged with it, the mere giving up of the note would not discharge the mortgage." (See, also, *Coburn v. Stephens et al.,* 137 Ind. 683; *Brooks v. Rice,* 56 Cal. 428; *La Grange v. Greer-Wilkinson Lumber Co.,* 59 Ind. App. 488; and *Shattuck v. Bank,* 63 Kan. 443, 65 Pac. 643.)

We find no error in the trial court concluding that the appellee was, under the express terms of the stipulation in connection with the provisions of the warranty deed, entitled to retain a first lien on the premises involved. Neither do we think there was any error in the trial court refusing to set aside the sheriff's sale when the appellant was given an extension of eighteen months' time in which to exercise its right to redeem under its mortgage, which was made a second lien. It was held in the case of *Bank v. Bank,* 103 Kan. 865, 176 Pac. 658, that—

". . . The court may decree that unless the junior encumbrancer elects to redeem within a proper time he may be barred of his lien, and the title of the senior encumbrancer may be quieted against him." (Syl. ¶ 1.)

The judgment is affirmed.